IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CIVIL NO. 2:13CV39-FDW-DSC

| | |
|---|---|
| BRADLEY L. BROCK,<br>    Plaintiff,<br><br>   vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social<br>Security Administration,<br>    Defendant. | )<br>)<br>)<br>)  **MEMORANDUM AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #12) and "Memorandum in Support ..." (document #12-1), both filed May 14, 2014; and Defendant's "Motion for Summary Judgment" (document #15) and "Memorandum in Support ..." (document #16), both filed August 13, 2014. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

---

[1] Pursuant to the Text-Only Social Security Scheduling Order entered on February 11, 2014, this matter is ripe upon the filing of Defendant's Motion and Memorandum. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

I. **PROCEDURAL HISTORY**

On December 6, 2010, Plaintiff filed an application for a period of disability and Supplemental Security Income ("SSI"), alleging that he was unable to work after July 10, 2007. (Tr. 63-69, 111, 540-48).

Plaintiff's application was denied initially and upon reconsideration. (Tr. 549-603). Plaintiff subsequently requested a hearing which was held on March 23, 2012. (Tr. 606-48).

On July 26, 2012, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 22-31).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 24). The ALJ also found that Plaintiff suffered from degenerative disc disease, obesity, a learning disorder, and borderline intellectual functioning, which were severe impairments within the meaning of the regulations, id., but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Id.

The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform:[2]

    a range of light work[3] as defined in 20 CFR § 404.1567(b) and 416.967(b);

---

[2] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or

2

> lift/carry push/pull twenty pounds occasionally, ten pounds frequently; sit/stand/walk about six hours of an eight hour workday; occasionally climb ladders, ropes, scaffolds, stoop and crawl; frequently climb ramps, stairs, kneel and crouch; should avoid concentrated exposure to hazards; do simple, routine, repetitive tasks at one-two step instructions for two-hour periods in an eight hour day; interact occasionally with the public, at non-production quota work; interact appropriately with coworkers and supervisors in a low social demand stable routine setting.

(Tr. 22). The ALJ further found that Plaintiff could not perform his past relevant work. (Tr. 29-30).

The ALJ then properly shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the Vocational Expert ("V.E.") identified jobs (handpackager, cleaner and assembler) that Plaintiff could perform. The V.E. also testified that there were more than 54,000 of those jobs available regionally. (Tr. 644).

The ALJ found Plaintiff capable of performing work existing in significant numbers in the national economy, and concluded that he was not disabled during the relevant period. (Tr. 31).

Plaintiff's Request for Review by the Appeals Council was denied. (Tr. 6).

Plaintiff filed the present action on October 18, 2013. Plaintiff assignments of error include the ALJ's finding that he did not meet Listing 12.05; his evaluation of opinion evidence, see Plaintiff's "Memorandum in Support ..." at 3 (document #12-1); his assessment of Plaintiff's RFC, including his credibility and subjective complaints of pain. id.; his reliance on the V.E.'s testimony because of an unresolved conflict with The Dictionary of Occupational Titles ("DOT")

---

pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

id.; and his failure to consider Plaintiff's Medicaid benefits. Id. The parties' cross-Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

4

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled at any time.[4] Plaintiff argues the ALJ erred in his determination that Plaintiff did not meet Listing 12.05B or 12.05C. At step three of the sequential evaluation process, the burden is on the claimant to establish that his impairment meets or equals a listing section. See Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The claimant must demonstrate that his condition meets all of the medical criteria for the listed impairment. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

To meet Listing 12.05, Plaintiff must show that he had "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period [before age 22]." "The required level of severity for this disorder is met

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

when the requirements in A, B, C, or D are satisfied…." Listings 12.05 B and C require

> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05. Plaintiff argues that the ALJ improperly discounted his IQ scores that fell below 70. The ALJ's decision to discount Plaintiff's low IQ scores is supported by substantial evidence. Records from the Banks County School system in 1984, while Plaintiff was in eighth grade, reflect scores on the Wechsler Intelligence Scale for Children -R ("WISC-R") of 73 – Performance, 75 – Verbal, and 72- Full Scale (Tr. 86, 96, 99). In 1980, Plaintiff had WISC-R scores of 55 – Performance, 80 – Verbal, and 67- Full Scale (Tr. 97). The psychometrist who evaluated Plaintiff in 1984 attributed the improvement in his IQ scores to medication. (Tr. 98).

On December 4, 2009, Plaintiff presented to Dr. Huthwaite for a consultative psychological evaluation (Tr. 191). On the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV"), Plaintiff scored a 58 in verbal comprehension and had a full scale IQ of 63 (Tr. 195). Plaintiff reported that his last mental health treatment was in the eighth grade, and that he had never taken any psychotropic medication. (Tr. 193-94). Plaintiff did report taking Ritalin while in school. (Tr. 197). Dr. Huthwaite diagnosed him with mild mental retardation. (Tr. 196). Dr. Huthwaite opined that he would be able to follow simple instructions, work at an adequate pace with supervision, and properly communicate with others (Tr. 197). Dr. Huthwaite recommended that Plaintiff seek ongoing psychiatric treatment. Id.

6

On February 3, 2011, Plaintiff presented to Dr. Richardson for a psychological examination (Tr. 230). On the WAIS-IV, Plaintiff achieved a verbal score of 61, and a full-scale IQ score of 59 (Tr. 232). He reported that he could not read or write, and once received therapy from someone in Georgia (Tr. 231).

An ALJ may weigh conflicting IQ scores. Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987). ALJs have the discretion to reject an IQ score, even if it is the only one in the record. Hancock v. Astrue, 667 F.3d 470, at 474–75 (4th Cir. 2012). Here, the ALJ found that Plaintiff's low IQ scores, including the full-scale IQ of 59 assessed by Dr. Richardson, were invalid because Plaintiff was tested during the times when he was not receiving any mental health treatment. (Tr. 28). Accordingly, the ALJ found that Plaintiff's assessed IQ scores from 1984 were more indicative of his functioning. Id.

Substantial evidence supports the ALJ's decision. The only record of Plaintiff receiving any mental health treatment was his own report that he had therapy in the eighth grade. (Tr. 193-94, 197). While in the eighth grade, Plaintiff's IQ scores were over 70. (Tr. 86, 96, 99). Plaintiff's low scores in 1980, 2009, and 2011 came while he was not receiving any treatment or medication for his learning disorder. (Tr. 97, 195, 232). The psychometrist who tested Plaintiff in 1984 attributed the improved scores to his medication. (Tr. 98). A symptom that can be reasonably controlled by medication or treatment is not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ's Listing analysis is supported by the psychological consultants who reviewed the record, including Plaintiff's IQ scores, and opined that he did not meet Listing 12.05. (Tr.

7

556-57, 584-87). See 20 C.F.R. § 404.1527(e) and Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (July 2, 1996) ( the opinion of a non-examining state agency medical source, insofar as it is supported by evidence in the case record, is recognized as that of a highly qualified physician who is an expert in the evaluation of the medical issues in disability claims under the Act.); see also Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986) ("[T]he testimony of a non-examining physician can be relied upon when it is consistent with the record").

When read as a whole, the ALJ's decision clearly addressed Plaintiff's IQ scores and properly concluded that only the 1984 scores were valid. (Tr. 28). Any failure to provide a more detailed analysis is harmless error. Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.")

Plaintiff contends that the ALJ erred by not properly considering the opinions of Doctors Singer and Franklin. Dr. Singer's January 18, 2012 treatment notes do not constitute a medical opinion for the ALJ to consider. Plaintiff presented to Dr. Silver complaining of lower back pain. (Tr. 403). Dr. Silver noted that Plaintiff had difficulty standing and was most comfortable while seated. (Tr. 405). Dr. Silver also found a limited range of motion of his back, and some tenderness to palpation. Id. Dr. Silver recommended that Plaintiff undergo an MRI (Tr. 406), but did not note any functional limitations. The ALJ expressly mentioned Dr. Silver's treatment. (Tr. 27). However, Dr. Silver did not provide an opinion regarding functional limitations that required any further discussion by the ALJ. See, e.g., Leovao v. Astrue, No. 2:11-cv-00054, 2012 WL 6189326, at *5 (W.D.N.C. Nov. 14, 2012) (document not an "opinion" within meaning

8

of 20 C.F.R.§ 416.927(a)(2) because "it did not directly address Plaintiff's ability to perform work-related activities").

On November 14, 2009, Plaintiff presented to Dr. Franklin for a consultative medical examination (Tr. 182).  He reported back injuries in 2006 and 2007. Id.  He also reported suffering radiculopathy symptoms in his legs every day. Id.  Plaintiff reported being able to care for himself, drive, stand for fifteen minutes at a time, sit for ten minutes, and lift up to five pounds. (Tr. 183).  Plaintiff walked with a slow gait, but without an assistive device. (Tr. 184). Dr. Franklin concluded that Plaintiff's medical problems supported moderate, or non-disabling, limitations. (Tr. 186).

Although the ALJ did not specifically discuss Dr. Franklin's report, this was harmless. Since Dr. Franklin found no disabling limitations, Plaintiff has failed to show how consideration of that opinion would have changed the ultimate decision here. Moreover, two State Agency medical experts, Doctors Goel and Zechman, reviewed the entire record including Dr. Franklin's report, and determined that Plaintiff was capable of at least medium work.  (Tr. 559-61, 587-89). The ALJ concluded that Plaintiff is capable of performing a modified range of light work. This is a more restrictive limitation than Doctors Goel, Zechman, and Franklin found.  (Tr. 26).  See Shinseki, 556 U.S. at 409 ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Plaintiff also assigns error to the ALJ's failure to discuss the April 27, 2011 decision by the State of North Carolina Department of Health and Human Services ("NCHHS") awarding him Medicaid benefits.  In its decision, NCHHS stated that it relied on the IQ score of 59

9

contained in Dr. Richardson's January 2011 consultative exam. As discussed above, the ALJ disregarded that IQ score in favor of higher scores achieved while Plaintiff was receiving mental health treatment. Since the ALJ thoroughly considered the medical evidence, any failure by the ALJ to explain why he discounted the Medicaid decision is harmless. Bradshaw v. Astrue, No. 2:08-cv-033, 2011 WL 4344538, at * 7 (W.D.N.C. Sept. 15, 2011) (holding that an ALJ's failure to explain why he discounted a state decision was harmless because the ALJ thoroughly considered the medical evidence); see also McLawhorn v. Colvin, No. 13cv0024, 2014 WL 2215936 at *6 (W.D.N.C. May 29, 2014) (J. Whitney) ("A more robust compliance with SSR 06–03p would not have changed the ALJ's ultimate decision. Thus, the ALJ's failure to explicitly refer to the state officer's findings is not a reversible error in the present case."); Cucumber v. Colvin, No. 1:12-cv-00292-FDW, 2013 WL 4494459, at *5 (W.D.N.C. Aug. 20, 2013) (same).

Plaintiff next challenges the ALJ's formulation of his RJC. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. Plaintiff has the burden of establishing his RFC by showing how his impairments affect his functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-06-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and

Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). Substantial evidence supports the ALJ's RFC determination.

Plaintiff was injured on July 10, 2007, when a tree limb struck his lower back. (Tr. 175). In 2007, Dr. Marshall treated Plaintiff conservatively with pain injections. (Tr. 169, 173, 175, 177). Although Dr. Marshall instructed him to go to physical therapy, Plaintiff went only once. (Tr. 169, 171). Plaintiff underwent back surgery on November 1, 2010. (Tr. 216). Following surgery, he had several normal examinations. On July 12, 2011, he was capable of moving all extremities without difficulty, and his gait was "quite" normal. (Tr. 497). On December 21, 2011, Plaintiff sought treatment for a rash at Angel Medical Center. He had good movement of all extremities without pain, and had no pain with movement of his back. These findings are inconsistent with his alleged disabling limitations. (Tr. 471). During several emergency room visits in 2011, his back pain was described as stable. (Tr. 493, 504, 509).

On January 12, 2012, Plaintiff exhibited 5/5 motor strength and normal deep tendon reflexes (Tr. 405). As the ALJ noted (Tr. 28), the treatment record indicates that Plaintiff suffers pain but does not establish that he is disabled.

The treatment record also shows malingering, thus undercutting Plaintiff's disability claim. On November 8, 2007, Dr. Marshall stated that Plaintiff did not appear in distress, but that any movement elicited exaggerated claims of pain. (Tr. 171). On November 16, 2007, Dr. Marshall suspected that Plaintiff was embellishing. (Tr. 169). On December 4, 2009, Dr.

11

Huthwaite noted that Plaintiff walked with a normal gait during the psychological examination, but claimed that it was painful. (Tr. 194). On June 14, 2011, Dr. Lewis noted that he agreed with a notation from another facility that Plaintiff exaggerated his pain. (Tr. 427). Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1993) (holding that an ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) (holding that evidence that a claimant is exaggerating symptoms may be considered in evaluating Plaintiff's subjective complaints).

As the ALJ noted (Tr. 27), the record also indicates that Plaintiff engaged in drug seeking behavior. On January 11, 2011, Plaintiff presented to Dr. Poorbaugh in the emergency room at Angel Medical Center asking for pain medication. (Tr. 276). Dr. Poorbaugh was concerned that Plaintiff was engaging in drug seeking behavior, but prescribed Percocet. Id. Dr. Poorbaugh informed him that he would need to consult with Dr. Silver for any additional medication. Dr. Poorbaugh conferred with Dr. Silver who agreed with that plan. Id. On January 19, 2011, Plaintiff returned to Angel Medical Center aggressively seeking pain medication. He refused an examination, and left stating he would get pain medication elsewhere. (Tr. 271). Dr. Medlock, who was aware of Plaintiff's prior treatment by Dr. Poorbaugh, concluded that Plaintiff was seeking pain medication. Id.

On January 18, 2012, Plaintiff informed Dr. Silver's staff that he had not received medication from any other physician, and was prescribed Oxycodone. (Tr. 407). Dr. Silver later learned that Plaintiff was receiving Oxycodone from another doctor. Dr. Silver decided that he

12

would no longer prescribe pain medication for Plaintiff absent unusual circumstances. Id. Plaintiff's drug-seeking behavior undercuts his claims of disability. Breed v. Colvin, 1:10-cv-583, 2013 WL 3717740, at *10 (M.D.N.C. Jul. 12, 2013) (holding that claimant's drug seeking behavior justified the ALJ's rejection of his subjective complaints).

The ALJ properly relied on the expert opinions provided by Doctors Goel and Zechman that Plaintiff could perform some combination of medium and light work during the relevant period (Tr. 559-63, 587-92). 20 C.F.R. § 404.1527(e) and SSR 96-6p, 1996 WL 374180 (July 2, 1996) (the opinion of a non-examining state agency medical source, insofar as it is supported by evidence in the case record, is recognized as that of a highly qualified physician who is an expert in the evaluation of the medical issues in disability claims under the Act.); see also Smith, 795 F.2d at 346 (4th Cir. 1986) ("[T]he testimony of a non-examining physician can be relied upon when it is consistent with the record").

Finally, Plaintiff argues that the ALJ erred at step five of the sequential process because the V.E.'s testimony conflicted with the DOT. The ALJ asked the V.E. whether his testimony was "consistent with and not totally reliant on" the DOT and the V.E. replied in the affirmative. (Tr. 645-46). Plaintiff argues that the ALJ's limiting of Plaintiff to jobs requiring only occasional interaction with the public (Tr. 26) conflicted with the DOT's description of the cleaner job. The DOT does not list ongoing interaction with the public as a requirement for the cleaner job. Since the DOT does not classify the cleaner job as involving ongoing interaction with the public, there is no conflict between Plaintiff's limitations and the DOT. See Bilodeau v. Colvin, No. 2:12-1298-CMC-BHH, 2013 WL 3880132, at *6 (D.S.C. Jul. 26, 2013) (holding

that since the DOT does not address limitations with public interaction, there was no conflict with the DOT).

Plaintiff argues that the hand packager and assembler jobs require Reasoning Level 2, which conflicts with the RFC's limitation to simple tasks. (Tr. 26). This Court has consistently held that there is no conflict between Reasoning Level 2 work and a limitation to simple tasks. Courtney v. Colvin, No. 12cv0073, 2014 WL 1882583, at * 3 (W.D.N.C. May 12, 2014) (citing Pippen v. Astrue, No. 1:09cv308, 2010 WL 3656002, at *7 (W.D.N.C. Aug. 24, 2010) ("work requiring a reasoning level of two is not inconsistent with a limitation to simple work").

The V.E. identified jobs that Plaintiff could perform and the ALJ's step five determination is supported by substantial evidence.

Although the medical records establish that the Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that

14

Plaintiff's "Motion for Summary Judgment" (document #12) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #15) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED**.

Signed: August 21, 2014

David S. Cayer
United States Magistrate Judge